Filed 7/10/26  P. v. Pacheco CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN ANTONIO PACHECO,<br><br>    Defendant and Appellant. | G064584<br><br>(Super. Ct. No. 20HF0694)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge. Affirmed in part, reversed in part, and remanded.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A.

Swenson and Tyler L. Krentz, Deputy Attorneys General, for Plaintiff and Respondent.

*      *      *

Juan Antonio Pacheco appeals his conviction as to three counts of sexual assault of a child under the age of 10. The child was the daughter of a woman he met on a dating website while in prison. Pacheco argues the trial court should not have allowed the jury to hear evidence that he was in prison when he met the mother of the victim. He further argues the court erred in sentencing him to the middle term for his conviction on lewd act with a minor, and that it should not have denied his request to strike a prior strike. We affirm the convictions and the bulk of the sentence. However, we agree the trial court did not make the necessary probable cause finding for Pacheco to undergo AIDS testing absent evidence of transfer of bodily fluids. Therefore, we strike that condition and remand on this limited point.

STATEMENT OF FACTS

In April 2020, Pacheco was dating Crystal G. The two met on a dating website in 2018, while Pacheco was in prison. After Pacheco's release around December of 2019, the two began "casually dating"; they saw each other on approximately six to seven Saturdays between December 2019 and April 2020.

When Pacheco and Crystal started dating, Crystal had two daughters, aged seven and three, respectively. On the evening of April 25, 2020, Crystal and her two daughters picked Pacheco up and brought him back to Crystal's apartment for an overnight visit. The girls fell asleep during the drive, but the older child, A.R., awakened when they arrived home. She got out of the car while Crystal retrieved her younger sister from the back seat.

Even though A.R. was awake and able to walk to the apartment, Pacheco picked A.R. up. Crystal and Pacheco went upstairs to the apartment carrying the girls. The way Pacheco carried A.R. made her feel uncomfortable, because his arm was touching her private area.

Pacheco and Crystal tucked the girls into their beds in their bedroom. A.R. was placed on her back and Pacheco put the blanket on top of her. A.R. was wearing a dress and underwear. Crystal and Pacheco had sexual intercourse and Crystal fell asleep.

A.R. was asleep and awoke when she heard footsteps. Pacheco opened her bedroom door and came into her room. A.R. testified she was sleeping on her side, facing her closet; she stayed still.

Pacheco approached her and moved the bottom part of her blanket up from her feet. He then moved her dress up and pulled her underwear down to her knees. A.R. was uncomfortable and scared. Pacheco touched her on her "private part," near the area where she would "pee" for several minutes. He touched her in a rubbing motion which did not hurt. Then he left and A.R. noticed the bathroom light went on.

Pacheco stayed in the bathroom for a little while and then he came back into A.R.'s room and repeated the touching. A.R. was still awake. The touching occurred near the bottom of her "private part," and it made her feel weird and uncomfortable. During both encounters, A.R. remembered quietly crying. After he finished, Pacheco put the blanket back on top of A.R. and left with the door to her bedroom open.

Crystal testified she woke up several times during the night and noticed Pacheco was not in bed with her. The first time, she saw the door to her room was open and the light was on in the bathroom. She could hear Pacheco blowing his nose and waited until he came out and came back to bed.

The second time, she woke up and Pacheco was again in the bathroom. This time he was very quiet. The third time she noticed he was gone, the bathroom light was off. It was completely dark, but Crystal noticed Pacheco poke his head through the doorway and he asked her where he could get water. Crystal told Pacheco the water was in the kitchen, and he went to get some. Crystal noted Pacheco had been to her apartment before and knew where she kept the water.

The following morning, Crystal got out of bed and noticed the door to her daughters' bedroom was open. She went into the room and saw both girls were still asleep. A.R. was sleeping on her stomach, but the blanket was "perfectly" placed on her back, which Crystal found strange.

Several days later, Crystal and her sister watched a documentary which prompted them to have a conversation about sexual abuse. Crystal began thinking about Pacheco. On their drive home, Crystal asked A.R. whether anyone had ever touched her. At first, A.R. said no, but after Crystal reassured her that she would not be in trouble, A.R. disclosed Pacheco had touched her. Crystal then called the police, who came to her house to start the investigation; a separate officer arrived to collect evidence from the girls' bedroom, including A.R.'s dress, underwear, and bedclothes.

PROCEDURAL HISTORY

Pacheco was charged with committing a lewd or lascivious act on a child under the age of 14 (Pen. Code,[1] § 288, subd. (a), counts 1 and 2), sexual penetration of a child ten years of age or younger (§ 288.7, subd. (b), count 3), and assault with intent to commit a sexual offense during the course of a first degree burglary (§ 220, subd. (b), count 4). It was further alleged

_____

[1] All statutory references are to the Penal Code.

4

Pacheco had one prior serious and violent felony conviction (§ 667, subd. (a)) which also qualified as a strike offense (§§ 667, subds. (d) & (e)(1), 1170.12, subd. (b) & (c)(1)).

After the parties presented their evidence in Pacheco's jury trial, the trial court granted Pacheco's motion to dismiss the sexual penetration count for lack of evidence and Pacheco admitted to having suffered a prior strike conviction. The jury thereafter convicted Pacheco on the remaining counts.

Both sides submitted sentencing briefs. The prosecution requested the maximum sentence with no mitigating factors. Pacheco sought the low term and concurrent sentencing, citing his history of being sexually molested as a child. Pacheco's counsel argued there was a presumption in favor of imposing the lower term unless the trial court affirmatively found imposing the lower term would be contrary to the interests of justice. Defense counsel also asked the court to strike Pacheco's strike prior under its section 1385 discretion, citing *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

At the sentencing hearing, the trial court declined to strike Pacheco's prior strike, saying it had "reviewed all the *Romero* factors and it's just the opposite of what would be required to strike the strike." It sentenced Pacheco to an indeterminate term of 14 years to life on count 4. It then sentenced him to a determinate term of 12 years on count 1, plus one-third the middle term on count 2, for a total of 16 years. Because it had doubled Pacheco's sentence on the indeterminate count, the court struck the five-year enhancement for a serious and violent prior felony (§ 667, subd. (a)). The total sentence imposed was 14 years to life plus 16 years.

Relevant to this appeal, Pacheco was also ordered to submit to AIDS testing "as directed by the Department of Corrections." Pacheco timely appealed.

## DISCUSSION

Pacheco makes four arguments on appeal: (1) evidence of his being in prison when he first met Crystal G. was prejudicial and should have been excluded; (2) the trial court should not have sentenced him to the middle term on count 1 given the lack of aggravating factors and evidence of childhood trauma; (3) the trial court erred by denying his request to strike the prior strike; and (4) there was no probable cause to order AIDS testing because there was no finding that bodily fluids had been transmitted to A.R. We disagree with him on all but the last argument.

### I.

### PACHECO FORFEITED ANY OBJECTION TO ADMISSION OF TESTIMONY ABOUT HIS BEING IN PRISON WHEN HE MET CRYSTAL AND THE RESULT OF THE PROCEEDINGS WERE UNLIKELY TO HAVE BEEN DIFFERENT EVEN IF COUNSEL HAD OBJECTED

The Attorney General argues Pacheco's first argument was forfeited because no objection to the subject testimony was raised below. We agree. "[T]rial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 756.) Pacheco's counsel did not object to testimony about him being in prison when he met Crystal.

Pacheco argues we should find that his counsel was constitutionally ineffective for failing to object to the evidence of his prison term. However, to claim ineffective assistance of counsel, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

6

A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

Our review of the record reveals ample evidence supporting the verdict; it was therefore unlikely that evidence of Pacheco being in prison had an impact on the outcome.[2] A.R. testified Pacheco touched her "private part" on two different occasions while she was in bed. Crystal noticed Pacheco's odd behavior that night, including his insistence on picking A.R. up and carrying her to the apartment even though she was awake and able to walk by herself. Crystal noted Pacheco was not in bed with her on at least three occasions during the night. She found it odd that the girls' bedroom door was open when she got up the next morning and that the blanket was perfectly placed on top of A.R. even though she was on her stomach. It seemed impossible to Crystal for A.R. to place the blanket on herself in such a manner while lying on her stomach.

Moreover, DNA from a swab taken from the interior waistband of A.R.'s underwear was compared to Pacheco's DNA. There was "very strong" evidence that Pacheco's DNA was present on the interior waistband of the underwear. This evidence was sufficient to support the jury's conclusions. Even if Pacheco's prison stint had not been mentioned, it is not reasonably probable that the jury would have found differently.

---

[2] During closing argument, trial counsel for Pacheco mentioned that Pacheco was in prison when Crystal met him. As the Attorney General suggests, Pacheco's counsel seems to have made a tactical decision not to seek to exclude evidence of Pacheco's imprisonment.

## II.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY SENTENCING PACHECO TO THE MIDDLE TERM ON COUNT ONE BECAUSE PACHECO DID NOT DEMONSTRATE THAT HIS CHILDHOOD TRAUMA WAS A CONTRIBUTING FACTOR IN THE CRIME

For the determinate counts, the trial court sentenced Pacheco to a total of 16 years: the middle term on count one, which is six years (see § 288, subd. (a)), doubled to 12 years pursuant to section 667, subdivision (e)(1); plus one-third the middle term on count two, which was two years, doubled to four years pursuant to section 667, subdivision (e)(1). Under section 1170, subdivision (b)(6), Pacheco argues, the default term for count one was the lower term because he had suffered trauma, including sexual molestation, as a child. To impose the middle term, according to Pacheco, the trial court had to find aggravating factors, which it did not find. We do not agree.

Under section 1170, subdivision (b), the trial court shall not impose a sentence exceeding the middle term, unless it finds aggravating circumstances justifying such a term, and those facts have been found true beyond a reasonable doubt by the trier of fact. (*Id.*, subds. (b)(1) & (2).) Under section 1170, subdivision (b)(6), the court "shall order imposition of the lower term if any" of several enumerated factors "was a contributing factor in the commission of the offense." Among the listed factors is "[t]he person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (*Id.*, subd. (b)(6)(A).) The court may only impose a term higher than the lower term if it "finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (*Id.*, subd. (b)(6).)

8

While the probation report prepared in advance of sentencing noted Pacheco had experienced sexual molestation as a child, and Pacheco's counsel noted this history in his sentencing brief, there was no showing that this history was a contributing factor in the offense. Indeed, the probation report listed no mitigating factors. The lower term was therefore not presumptive, and the trial court was not required to weigh aggravating and mitigating circumstances on the record to impose the middle term.

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING PACHECO'S MOTION TO STRIKE HIS PRIOR STRIKE

In *Romero*, the California Supreme Court held that the trial court may strike a prior conviction or the punishment for said conviction pursuant to its discretion under section 1385. (*Romero*, *supra,* 13 Cal.4th at pp. 529–530.) Here, Pacheco made a motion under *Romero* asking the trial court to strike his prior strike conviction, and the court declined to do so. Pacheco argues this was error because the offense was connected to past trauma and because the offense itself occurred on one single day and did not constitute a long-standing pattern of abuse. He further argues that, even without the strike, he would be facing a lengthy prison term. Given these factors, Pacheco argues the court should have struck the strike prior. Again, we disagree.

"A court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385[, subdivision] (a), and is subject to review for abuse." (*Romero*, *supra*, 13 Cal.4th at p. 530.) The phrase "'"in furtherance of justice' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]" [Citations.] At

9

the very least, the reason for dismissal must be "that which would motivate a reasonable judge."'" (*Id.* at pp. 530–531.)

Here, the trial court determined the crimes committed were not less serious than Pacheco's previous crimes. Indeed, they "indicate[d] a greater danger to society" than his previous crime. The court found it would not be in furtherance of justice to strike the strike, and we see no abuse of its discretion in so finding.

IV.

THE REQUIREMENT THAT PACHECO SUBMIT TO AIDS TESTING SHOULD BE STRICKEN AND THE ISSUE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS

The trial court must require a defendant to submit to AIDS testing if the defendant is convicted of a sexual offense listed in section 1202.1, subdivision (e). (See § 1202.1, subd. (a).) For purposes of section 1202.1, a sexual offense includes rape, unlawful intercourse with a person under 18, sodomy, or oral copulation. (*Id.*, subds. (e)(1)–(4).) For other sexual offenses, such as a lewd or lascivious act with a child in violation of section 288, testing is required "if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim." (§ 1202.1, subd. (e)(5)(A).)

Both Pacheco and the Attorney General agree the trial court lacked evidence before it to make the required probable cause finding. So do we. We see nothing in the record to indicate such a transfer occurred. No semen was found in the case, and to our understanding of the record, neither

10

was saliva.[3] Additionally, the court granted Pacheco's motion to dismiss count 3 for sexual penetration. However, as both parties aptly note, "it would be inappropriate simply to strike the testing order without remanding for further proceedings to determine whether the prosecution has additional evidence that may establish the requisite probable cause." (*People v. Butler* (2003) 31 Cal.4th 1119, 1129.) On remand, the court should conduct further proceedings to determine whether probable cause exists to order AIDS testing under section 1202.1, subdivision (e)(5)(A).

## DISPOSITION

The order requiring Pacheco to submit to AIDS testing is stricken, and the matter is remanded to the trial court for proceedings to determine whether there is probable cause to believe bodily fluids capable of transmitting HIV were transferred from Pacheco to A.R. (See § 1202.1, subd. (e)(5)(A).) Upon completion, the trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the

---

[3] The forensic scientist who testified about DNA findings in the case stated it was possible to test DNA evidence for amylase, a component of saliva. But she did not say an amylase test was conducted in this case.

Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

                                                        MOTOIKE, P. J.

WE CONCUR:


MOORE, J.


SCHWARM, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.